IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THOMAS ALEXANDER PORTER,

Petitioner,

v.

EDDIE L. PEARSON,
Warden, Sussex I State Prison

Respondent.

Civil Action No. 3:12–CV–550-JRS

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Petitioner Thomas Alexander Porter's Motion for Leave to Supplement his Petition with Additional Substantial Claims Related to Ineffective Assistance of Trial Counsel pursuant to Fed. R. Civ. P. 15(a)(2)(ECF No. 44). Porter seeks relief under 28 U.S.C. § 2544 from his capital murder conviction and death sentence for the 2005 shooting death of a Norfolk police officer. Porter seeks to amend his § 2544 Petition and the Warden opposes the Motion. For the reasons provided below, the Court GRANTS IN PART and DENIES IN PART the Motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The following is a brief summary of the procedural history and facts, as determined by the Supreme Court of Virginia, relevant to the present Motion. *See Porter v. Commonwealth* (*Porter I*), 661 S.E.2d 415 (Va. 2008).  On the afternoon of October 28, 2005, Porter and another man, Reginald Copeland, traveled to a Norfolk apartment complex to inquire about purchasing marijuana. They entered the apartment of Copeland's acquaintance Valorie Arrington, where her two daughters, two cousins, sister, and niece

were also present. Porter eventually began arguing with the women over the marijuana and brandished a semi-automatic pistol concealed on his person. Copeland exited the apartment, with Porter locking the door behind him, and left the complex. After walking a few blocks, Copeland came across three uniformed police officers, including Norfolk Police Officer Stanley Reaves, and reported Porter's behavior. Officer Reaves then drove to the complex, with Copeland following on foot. After Officer Reaves exited his vehicle and approached the building, he encountered Porter on the sidewalk in front of the complex. Officer Reaves confronted Porter by grabbing his left arm, and instructed Porter to take his hands out of his pockets. Porter drew the pistol concealed in his pocket and shot Officer Reaves three times, killing him. Porter then took Officer Reaves' service revolver and fled.

At trial, the prosecution argued that Porter was guilty of capital murder because he intentionally killed Officer Reaves in order to interfere with the performance of his official duties. Specifically, the prosecution argued that Porter, who was already a convicted felon and knew that he could be sent back to jail if found in possession of a firearm, shot Officer Reaves to prevent Reaves from arresting him for being a felon carrying a firearm. Porter did not deny shooting Officer Reaves, but claimed that he did so because Officer Reaves pulled his service revolver on him, causing Porter to fear for his life and safety. One issue emphasized at trial was at what point Porter knew that there was a police officer outside the complex whom he might encounter, and thus, when he could have formed the intent to interfere with a police officer engaged in his official duties. Valorie Arrington's daughter Latoria testified that before Porter left the apartment, she stated aloud that she could see Copeland and Officer Reaves talking outside through the apartment window. Valorie testified that when Porter left, he ran out of the apartment and down the building stairs

quickly. Valorie's sister, Monika Arrington, and her cousins, Monica Dickens and April Phillips, testified corroborating Valorie and Latoria's accounts.

The Commonwealth sought the death penalty based on Porter's future dangerousness,[1] namely the probability that he would commit acts of violence constituting a continuing serious threat to society. Porter argued in closing arguments that, in considering his future dangerousness, the term 'society' meant prison society since Porter would spend the rest of his life incarcerated without parole if not sentenced to death. *Porter I*, 661 S.E.2d at 442. The Commonwealth objected, and the trial court instructed the jury that: "Society is everything. Everybody, anywhere, anyplace, anytime." (SH Appx. 4169.) *See Porter I*, 661 S.E.2d at 442. Porter's counsel then continued that the jury should focus on the fact that society incorporates persons within the penitentiary system, and after the Commonwealth again objected, the trial court instructed that: "Virginia law is very clear. Society is everyone, everywhere. You are not required to simply consider what may happen in a penitentiary. You are required to consider society. It's a definitional word. It's not that complex to start with. It means everybody, everywhere, any place, any time. It's pretty simple." (SH Appx. 4172.) Trial counsel did not object at the time, but orally moved for a mistrial at the end of closing argument based on these instructions, which the trial court denied. Porter also moved for the appointment of a risk assessment expert to rebut the evidence of his future dangerousness, but this motion was denied.

On March 7, 2007, Porter was convicted by a jury in the Circuit Court for Arlington County of the capital murder of Officer Reaves, use of a firearm in the commission of a

---

[1] *See* Va. Code Ann. § 19.2-264.2 ("[A] sentence of death shall not be imposed unless the court or jury shall (1) after consideration of the past criminal record of convictions of the defendant, find that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing serious threat to society"); *see* § 19.2-264.4(C).

murder, and grand larceny of a firearm. On March 14, 2007, the jury found the future dangerousness aggravating factor and sentenced Porter to death for the capital murder conviction. The jury also sentenced Porter to a total of twenty-two (22) years' imprisonment for the non-capital offenses. On July 16, 2007, the Circuit Court for the City of Norfolk imposed Porter's sentence and entered final judgment on July 18, 2007.

On August 13, 2007, Porter appealed his capital murder conviction and death sentence to the Supreme Court of Virginia, which affirmed the judgment on June 6, 2008, *see Porter I*. Porter then petitioned the United States Supreme Court for a writ of certiorari, which was denied on April 20, 2009. On August 10, 2009, Porter filed a petition for state habeas post-conviction relief in the Supreme Court of Virginia, raising several claims of ineffective assistance of trial counsel under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), among other claims. The Warden moved to dismiss the state habeas petition, and after the production of relevant work-product from Porter's trial counsel relating to the ineffective assistance claims, and a supplemental motion to dismiss, the Supreme Court of Virginia dismissed Porter's petition on March 2, 2012. *See Porter v. Warden of the Sussex I State Prison* (*Porter II*), 722 S.E.2d 534 (Va. 2012). The Court denied Porter's petition for a rehearing on April 28, 2011, and the trial court set Porter's execution for August 2, 2012.

Porter filed a motion for a stay of the execution in this Court on July 27, 2012, and the Court granted a stay of ninety (90) days on July 30, 2012. The Court also directed Porter to file his Petition, not to exceed eighty (80) pages, within seventy (70) days. On July 31, 2012, by Porter's Motion, the Court appointed two attorneys as counsel, one of whom had also represented Porter in his state habeas proceedings. Porter moved for an extension of time and of the page limit on September 20, 2012, and the Court denied both motions on

September 25, 2012. On October 9, 2012, the date his Petition was due, Porter filed a second motion for an extension of time until February 19, 2013, or alternatively, an additional sixty (60) days to separately file his procedurally defaulted claims.

The Motion was filed by one of Porter's appointed counsel individually seeking to prepare claims that Porter's state habeas counsel—Porter's other appointed counsel in this Court—provided ineffective assistance by failing to raise claims of ineffective assistance of *trial* counsel in the state habeas proceedings, arguing that the default of the underlying ineffective assistance claims was excused in light of the recently decided *Martinez v. Ryan*, 132 S.Ct. 1309 (2012)(holding that the ineffective assistance of initial post-conviction review counsel may establish cause for defaulting an ineffective assistance of trial counsel claim). Porter timely filed his Petition on October 9, 2012, and the Court denied his second motion for an extension of time as moot on October 10, 2012. The Warden moved to dismiss the Petition on November 23, 2012, and the Motion to Dismiss is ripe for review.

On February 19, 2013, Porter filed the instant Motion to amend[2] and asked for an immediate ruling based on his calculation that the § 2254 statute of limitations was to expire that day. Specifically, Porter seeks to amend four of his claims and also to add four procedurally defaulted claims that he did not initially include in his Petition:

---

[2] Although Porter moves for leave to "supplement" his Petition, this Motion may only be considered as a Motion to Amend. Under Rule 15(a), a moving party may file an amended complaint which "typically relates to matters that have taken place prior to the date of the pleading that is being amended." *Reyazuddin v. Montgomery Cnty*, No. DKC-11-0951, 2012 U.S. Dist. LEXIS 150093, at *7 (D.Md. Oct. 18, 2012)(citing *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 90 (1st Cir. 2008)). However, a motion to supplement is governed by Rule 15(d), which "permit[s] a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Since Porter's claims all involve events occurring prior to the filing of his Petition, the Motion will be treated as a Motion to Amend under Rule 15(a)(2).

Claim Five:    Porter's trial counsel was ineffective in not using Reginald Copeland's testimony in closing argument to rebut Latoria Arrington's testimony, and state habeas counsel was ineffective in not clearly identifying testimony that corroborated Copeland's account. To the extent this ineffective-assistance-of-trial-counsel claim has been defaulted, Porter asserts that the ineffective assistance of state habeas counsel excuses the default under *Martinez*.

Claim Nine:    Porter's trial counsel was ineffective in not properly investigating and rebutting the prosecution's evidence that Porter ran into the home of a stranger in order to evade the police, and his state habeas counsel was ineffective in inadvertently deleting a citation to Porter's affidavit supporting his claim that the home he ran into was his own. To the extent this ineffective-assistance-of-trial-counsel claim has been defaulted, Porter asserts that the ineffective assistance of state habeas counsel excuses this default under *Martinez*.

Claims Eight,    Porter's trial counsel was ineffective in not adequately investigating
Nine & Ten:    mitigating and aggravating evidence, and his state habeas counsel was ineffective in failing to support the ineffective assistance of trial counsel claims with two affidavits from Porter's trial investigators. To the extent that these ineffective-assistance-of-trial-counsel claims have been defaulted, Porter asserts that the ineffective assistance of state habeas counsel excuses the defaults under *Martinez*.

Claim    Porter's trial counsel was ineffective in not asserting that his proposed
Fourteen:    risk assessment would be of the same nature as that contained in his expert's declaration. Porter asserts that the ineffective assistance of state habeas counsel in not raising this specific ineffective-assistance-of-trial-counsel claim excuses the default under *Martinez*.

Claim    Porter's trial counsel was ineffective in not objecting to curative
Fifteen:    instructions as to the definition of "society." Porter asserts that the ineffective assistance of state habeas counsel in not raising this specific ineffective-assistance-of-trial-counsel claim excuses the default under *Martinez*.

Claim    Porter's trial counsel failed to adequately investigate the shooting by
Sixteen:    speaking with Valorie Arrington about her quid pro quo agreement to testify for the prosecution. Porter claims that the ineffective assistance of state habeas counsel in not raising this specific ineffective-assistance-of-trial-counsel claim excuses the default under *Martinez*.

Claim    The prosecution violated its obligations under *Brady v. Maryland*, 373
Seventeen:    U.S. 83 (1963) by not disclosing a quid pro quo agreement with Valorie Arrington which would have impeached her testimony. Porter asserts

that the suppression of the evidence constitutes cause for his default of this claim under *Banks v. Dretke*, 540 U.S. 668 (2004) and that he was prejudiced because the evidence is material under *Brady*.

The Warden filed an immediate response in opposition, arguing that the proposed amendments were made in bad faith and are futile because they lack merit. On February 19, 2013, the Court tolled the statute of limitations in order to consider the merits of the Motion, and with leave of Court, the Warden filed a supplemental response on March 4, 2013. Porter has replied to the Warden's response and this matter is now ripe for review.

## II.    LEGAL STANDARD

Pursuant to Rule 15(a), when a party seeks to amend a pleading more than twenty-one (21) days after the opposing party has responded, "[the] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court has discretion to grant or deny leave, but "'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Laber v. Harvey*, 438 F.3d 404, 426-27 (4th Cir. 2006)(citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)); *Foman v. Davis*, 371 U.S. 178, 182 (1962)("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , futility of amendment, etc.—the leave sought should, as the rules require, be freely given")(internal quotation marks omitted). "[D]elay alone is not sufficient reason to deny leave to amend," as the delay "must be accompanied by prejudice, bad faith, or futility." *Johnson*, 785 F.2d at 509-10.

7

Whether prejudice exists depends on the nature and timing of the amendment; while an amendment is not prejudicial "if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred," an amendment is prejudicial if it "raises a new legal theory that would require the gathering an analysis of facts not already considered . . . and is offered shortly before or during trial." *Laber*, 438 F.3d at 427 (internal citations omitted). Bad faith is shown by proof that the moving party's motive is to unduly delay the litigation, *see Ward Elecs. Serv. Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987), and may be inferred if the delay is unexplained, *see Nat'l Bank of Wash. v. Pearson*, 863 F.2d 322, 328 (4th Cir. 1988). "A motion to amend a pleading should only be denied as futile if a proposed amendment advances a claim or defense that is frivolous or legally deficient on its face," *Hillyard Enters. V. Warren Oil Co.*, No. 5:02-CV-329-H(4), 2003 U.S. Dist. LEXIS 27920, at *13 (E.D.N.C. July 3, 2003)(citing *Johnson*, 785 F.2d at 510), for instance, because it fails to state a plausible claim under Rule 12(b)(6), *United States ex. Rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). *See Davis v. Piper Aircraft Co.*, 615 F.2d 606, 613 (4th Cir. 1980); *Chattery Int'l, Inc. v. JoLida, Inc.*, WDQ-10-2236, 2011 U.S. Dist. LEXIS 109788, at * 10 (D. Md. Sept. 27, 2011)("Leave to amend will only be denied as futile when the amended motion would not survive a motion to dismiss)(citing *Kellogg Brown & Root, Inc.*).

## III.   DISCUSSION

Porter seeks to amend four of the claims in his Petition in light of *Martinez* and to add four new claims. The Court considers each category of claims separately.

### A.  *Porter's Amendments to Claims Already Included in his Petition*

In order to state a plausible claim under *Martinez*, a petitioner must allege that: (1) the state imposing the sentence requires a prisoner to raise ineffective assistance of trial counsel claims in the initial-review collateral proceeding, (2) the petitioner was not appointed counsel in the initial-review collateral proceeding or his appointed counsel was ineffective under *Strickland*, and (3) the underlying ineffective assistance of trial counsel claim is substantial in that it has "some merit." *Martinez*, 132 S.Ct. at 1318. *Martinez* "does not concern attorney errors in other kinds of proceedings." *Id.* at 1320. Since Virginia requires ineffective assistance claims to be raised on initial collateral review, *Lenz v. Commonwealth*, 544 S.E.2d 299, 304 (Va. 2001), the *Martinez* inquiry in this case concerns only the latter two prongs.

*Martinez* applies only to procedurally defaulted claims of ineffective assistance of trial counsel, *see* 132 S.Ct. at 1315, 1320. A claim is procedurally defaulted if the petitioner failed to exhaust available state remedies by fairly presenting "both the operative facts and the controlling legal principles," of his federal claim "face-up and squarely" to the state court, and the state court would now find the claim procedurally barred. *See Pethtel v. Ballard*, 617 F.3d 299, 306 (4th Cir. 2010)(internal quotations and citations omitted); *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). *See also Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997)("[A] federal habeas court may consider only those issues which have been fairly presented to the state courts")(internal quotations and citations omitted).

In this case, the Court DENIES Porter leave to amend Claims Five, Eight, Nine, and Ten because these claims are not procedurally defaulted. Although the Warden argued in support of the Motion to Dismiss that Porter defaulted various arguments in support of these claims because the arguments were not squarely presented to the Supreme Court of

Virginia, the Warden now argues that the claims are *not* defaulted. (*See* Warden's Supp. Reply. Opp. Mot. for Leave to Amend ("Warden's Supp. Reply") 6, ECF No. 50). Upon careful review of each claim, it is apparent that Claims Five, Eight, Nine and Ten are not defaulted. Amendment would thus be futile as Porter cannot state a plausible *Martinez* claim on the ground that state habeas counsel's ineffective assistance excuses the procedural default of a meritorious ineffective-assistance-of-trial-counsel claim if there is no procedural default.

      1.  <u>Claim Five</u>

In Claim Five, Porter asserts that his trial counsel were ineffective under *Strickland* because they failed to cite in closing argument Reginald Copeland's testimony that he arrived at Officer Reaves's vehicle at the same time as Porter was leaving the apartment building. Porter claims that Copeland's testimony could have rebutted Latoria Arrington's testimony that she saw Copeland speaking to Officer Reaves before Porter left the apartment. To dispel trial counsels' claims that they made a reasonable strategic decision to challenge the testimony of both Copeland and Arrington, Porter argues that his trial counsel could have corroborated Copeland's account with the testimony of Melvin Spruill and Simone Coleman. In Porter's state habeas petition, he argued: "Copeland was a key prosecution witness with no incentive to contradict the state's case. No other eyewitness supports the account of the tight-knit group of women in the apartment with respect to timing. *See* A2226-29; 1646-52; 1723-24." (Fed. Appx. 126.) Pages A1646-52 and A1723-24 contain the testimony of Spruill and Coleman, respectively, as to when each saw Porter and Officer Reaves interact, and Porter argues that this testimony was favorable to him.

To the extent that this citation without contextual or parenthetical explanations as to which witnesses' testimony would be found on the cited pages constitutes a default of

the claim, Porter argues that his "state habeas counsel's failure to clearly identify the corroborative testimony or provide a simple unambiguous citation to the testimony of Coleman and Spruill falls well below the minimal norms expected of an attorney under *Strickland*." (Pet'r's Mot. Leave to Amend Ex. A (hereinafter "Porter's Add. Claims") 2.) Porter further argues that if state habeas counsel failed to fully explain the citation "intentionally because of page limitations that arbitrarily constrained counsel's choices and forced counsel to make 'either-or' strategic decisions about which meritorious claims to preserve, counsels' performance was deficient and prejudicial under *United States v. Cronic*, as the state court imposed restrictions such that 'the likelihood that any lawyer, even a fully competent one, could provide effective assistance [was] so small that a presumption of prejudice is appropriate.' 466 U.S. 648, 659-60 (1984)." (*Id.*)

However, Porter's arguments are unavailing because this claim is not procedurally defaulted. The failure of state habeas counsel to sufficiently label the cited testimony does not amount to a failure to present to the state court the "operative facts and the controlling legal principles" underlying Porter's ineffective assistance of trial counsel claim. *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)(citing *Matthews*, 105 F.3d at 911(internal quotation marks omitted)). Even if state habeas counsel could have more clearly identified the portions of the trial transcript cited in support of Porter's claim, *Martinez* applies only to *procedurally defaulted* ineffective assistance claims. In this case, the Supreme Court of Virginia was fully apprised of the substance of Porter's federal claim despite counsel's failure to explain which witnesses' testimony was contained on the cited pages, and thus, Claim Five is not procedurally defaulted. Accordingly, amendment under *Martinez* would be futile and the Court DENIES the Motion to Amend Claim Five.

2. <u>Claim Nine</u>

In Claim Nine, Porter argues that his trial counsel were ineffective in not properly investigating a claim of aggravating evidence made by the prosecution that Porter once fled the police and escaped into a stranger's townhome, and that if trial counsel had investigated they would have discovered that the home Porter ran into was his own, thereby minimizing the impact of this aggravating evidence. The Supreme Court of Virginia denied this claim on state habeas review after finding that Porter provided no support for his claim that he lived in the home, and Porter has since asserted that, in an effort to edit his petition to comply with the state's page limits, his state habeas counsel inadvertently deleted the reference to the pages of Porter's affidavit where he provides this townhome as his address. Accordingly, Porter argues that "[t]o the extent the lack of a single citation is viewed to support the state court finding, state habeas counsel's failure to insert a simple, ten-character page cite in the state habeas petition fell well below the minimal norms expected of an attorney under *Strickland*" (Porter's Add. Claims 3), and Porter repeats his argument under *Cronic* that he was prejudiced by the page limits, *see supra* p. 11.

However, amendment in light of *Martinez* would be futile because Claim Nine is not procedurally defaulted. The requirement that a federal habeas petitioner exhaust the remedies available to him in state court "applies as much to the development of facts material to a petitioner's claim as it does to the legal principles underlying those claims." *Winston v. Kelly*, 592 F.3d 535, 549 (4th Cir. 2010); *Breard*, 134 F.3d at 619 ("The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition.") In this case, Porter did present the factual claim that he lived in the townhome to the Virginia Supreme Court, even

if state habeas counsel neglected to cite Porter's affidavit in support of this factual assertion. While "new evidence surfacing in federal court that fundamentally alters a claim will render the claim unexhausted," *Winston*, 592 F.3d at 556, this case is unlike those in which courts have found a claim to be unexhausted because the petitioner presents entirely new or significantly different factual claims in federal court. *See, e.g., Burns v. Estelle*, 695 F.2d 847, 849-50 (5th Cir. 1983)(petitioner's claim in federal habeas that counsel was ineffective due to a conflict of interest that prevented counsel from calling an alibi witness was substantially different from the general claim on state habeas that counsel was ineffective due to a conflict of interest).  Porter's affidavit was evidence in the state record considered by the Supreme Court of Virginia, and the citation to the affidavit in his federal habeas petition does not fundamentally alter the claim that he lived in the townhome. For these reasons, Porter's claim has been exhausted and is not procedurally defaulted, and therefore, his proposed amendment under *Martinez* would be futile. Accordingly, the Court DENIES Porter's Motion for leave to amend Claim Nine.

3.  <u>Claims Eight, Nine, Ten</u>

In Claims Eight, Nine, and Ten, Porter presents several arguments that his trial attorneys were ineffective in failing to adequately investigate his abusive childhood, correctional experiences, and the prosecution's aggravating evidence. In support of these claims, Porter cites affidavits from his trial investigator Daryl Van Horn and trial mitigation specialist Jennifer Schweizer. The parties dispute whether these affidavits were part of the record considered by the Supreme Court of Virginia on state habeas, and thus, Porter argues that to the extent that the affidavits were not presented on state habeas, "state habeas counsel's failure to perform the ministerial act of entering the affidavits into the

state record with Porter's petition along with the fifty-plus other affidavits that were introduced at that time fell well below the minimal norms expected of an attorney under *Strickland*." (Porter's Add. Claims 4.) Porter also argues that if the affidavits were not attached to the state habeas petition because they had not yet been created, it could not have been a reasonable strategic decision to present the numerous affidavits that *were* attached to the petition without first creating these two particular affidavits. Porter asserts that many of the affidavits in the state record from fellow inmates, past teachers, acquaintances, and family members are highly cumulative, and that a reasonable attorney would not have prioritized attaching these affidavits to the state habeas petition over affidavits from the investigators about the scope of their investigation.

As with Claim Five, the Court finds that Claims Eight, Nine, and Ten are not procedurally defaulted. Firstly, Jennifer Schweizer's affidavit, which was appended to Porter's opposition to the Warden's Supplemental Motion to Dismiss the state habeas petition (*see* Fed. Appx. 500 n.6, ECF No. 22-17), was considered by the Supreme Court of Virginia and was a part of the state record. *See Porter II,* 722 S.E.2d at 538. Secondly, although it is not apparent that Daryl Van Horn's affidavit was made a part of the record, the failure to attach Van Horn's affidavit to the state habeas petition does not procedurally default Claims Eight, Nine, and Ten because Van Horn was the fact investigator for the guilt phase of Porter's trial, and these claims each concern the investigation into mitigating and aggravating evidence for the penalty phase. Schweizer was the only mitigation investigator at the Capital Defender Office which represented Porter and it was primarily her responsibility to develop and conduct the mitigation investigation. (Fed. Appx. 508 (Schweizer Aff. ¶¶ 3-5.)) Van Horn occasionally helped Schweizer by "locating penalty-

phase witnesses" and making the initial contact with a mitigation witness, but Van Horn "was not responsible for record collection, reviewing records received, or conducting substantive interviews with penalty phase witnesses." (*See id.* at 507-08; Fed. Appx. 565 (Van Horn Aff. ¶ 5.)) Since Schweizer's affidavit was a part of the state record, and because Van Horn's affidavit does not present any new facts that are material to Claims Eight, Nine, and Ten, these claims are not defaulted. As amendment would be futile, the Court thus DENIES the Motion for Leave to Amend Claims Eight, Nine, and Ten.

### B.  *Porter's Additional Claims*

Porter also seeks to add four procedurally defaulted claims to his Petition. The Court GRANTS Porter leave to amend his Petition to include Claims Fourteen, Fifteen, Sixteen, and Seventeen to his Petition. While none of these claims are particularly strong, Porter has at least pled claims that suffice under the liberal standard for granting leave to amend.

#### 1.  Claim Fourteen

In Claim Fourteen, Porter argues that his trial counsel failed to provide sufficient support for his pretrial motion for the appointment of a forensic psychologist. Porter moved for the appointment of Dr. Mark Cunningham to provide risk assessment testimony for the jury's consideration in determining his future dangerousness, and trial counsel submitted along with this motion a sample individualized risk assessment that Dr. Cunningham had produced for another capital case, *Commonwealth v. Gray*. The trial court denied the motion, and the Supreme Court of Virginia affirmed on direct appeal, finding that the motion failed to proffer that the expert would produce an individualized or particularized analysis of Porter's criminal record, prior history, prior or current incarceration, or the circumstances of the offense. *Porter I*, 661 S.E.2d at 440. The Court

also held that Porter's defective proffer was not saved by his reference to the declaration that Dr. Cunningham produced in the *Gray* case (hereinafter "*Gray* Declaration") because "[a]t no place in the Prison Expert Motion, or in his oral argument before the circuit court, does Porter state that Dr. Cunningham intends to do in this case that which he purported to do in the Gray case." *Id.* at 441. The Court further stated: "Even if we assume that the representation in the Gray Declaration would meet the test [for admissibility] of our prior decisions, Porter never proffered that analysis was what he intended in this case." *Id.*

Because the Supreme Court of Virginia called this motion "notable for an essential, but missing, element," *id.* at 440, Porter asserts that his trial counsel performed deficiently under *Strickland*. Porter argues that the prejudice resulting from trial counsels' failure to make the necessary proffer is cumulative with the prejudice articulated in Claim Eleven of his federal habeas petition, wherein he asserts that the state court violated his rights under the Eighth and Fourteenth Amendments by denying him the assistance of a risk assessment expert. Porter further contends that it was unreasonable for state habeas counsel to fail to raise this ineffective assistance of trial counsel claim "in the face of a state court holding that openly chided trial counsel for an apparent oversight that contributed to the denial of a motion of critical importance to Porter's sentencing defense." (Porter's Add. Claims 7.) Since state habeas counsel did separately present Claim Eleven challenging the denial of the risk assessment expert, Porter argues that it was unreasonable to "forego an obvious ineffective assistance of counsel claim that is part and parcel of another existing meritorious claim." (*Id.*) Porter argues that he was prejudiced because state habeas counsel's error resulted in the failure "to preserve critical support for a claim that is

otherwise meritorious" (*id.*), and he also reasserts his argument of deficient performance and presumed prejudice under *Cronic.*

In response, the Warden argues that the Supreme Court of Virginia concluded that the *Gray* Declaration was not sufficiently individualized to be admissible, thus Dr. Cunningham's report would not have been admissible even if Porter had proffered that he would produce the same kind of report as in *Gray*. Therefore, the Warden asserts that Porter was not prejudiced, and thus amendment would be futile, because the underlying ineffective assistance of trial counsel claim has no merit.

The question of whether Porter has stated a plausible *Martinez* claim is a close call. However, under the permissive standard for a motion to amend in which the Court must freely grant leave, the Court finds that amendment would not be futile because Porter has at least stated a claim that is not "frivolous or legally deficient on its face," *Hillyard Enters.*, 2003 U.S. Dist. LEXIS 27920, at *13, even if it is not an especially strong claim. Accordingly, the Court GRANTS Porter leave to Amend his Petition to include Claim Fourteen.

2.  Claim Fifteen

In Claim Fifteen, Porter asserts that his trial counsel was ineffective in failing to timely object to the trial court's curative instructions during his closing argument that the jury was not required to simply consider what may happen in prison when evaluating the probability that Porter would commit a violent crime constituting a serious threat to society. Porter describes the instructions as "an impromptu rebuttal argument on behalf of the prosecution," and "stinging rebuke and misstatement," and he argues that "[t]he jury could only have interpreted this one-sided and intemperate intervention to mean that the trial court agreed with the prosecution's allegation about Porter's dangerousness, and had

felt compelled to intervene to keep trial counsel from misleading the jury on this crucial point." (Porter's Add. Claims 10-11.) Porter argues that he was prejudiced by trial counsels' failure to immediately object because the Supreme Court of Virginia refused to consider his argument on direct appeal that the instructions violated the Sixth Amendment on the ground that trial counsel had not timely objected.

Porter asserts that it was unreasonable for state habeas counsel to not raise an ineffective assistance claim based on the failure to object because this potential claim was obvious, and "[u]nder prevailing professional norms, a reasonable habeas attorney would not have had any strategic reason for foregoing a meritorious claim." (Porter's Add. Claims 11.) Porter argues that the failure to raise this claim was even more unreasonable in light of the fact that state habeas counsel was already challenging the jury's finding of future dangerousness by presenting Claim Eleven, arguing that the state court violated the Eighth and Fourteenth Amendments by denying Porter a risk assessment expert. Porter asserts that Claims Eleven and Fifteen cumulatively prejudiced him by denying him "a constitutionally sound sentencing proceeding on the aggravating factor of future dangerousness" (*id.* at 12), and he again argues that state habeas counsel's performance was deficient and prejudicial under *Cronic*.

In response, the Warden argues that the trial court did not err or abuse its discretion in making the curative instructions defining "society," and therefore, even if trial counsel had timely objected, Porter could not have prevailed on appeal. Accordingly, the Warden argues that amendment would be futile because the underlying ineffective assistance of trial counsel claim has no merit.

As with Claim Fourteen, while Porter has not presented a strong claim under *Martinez* in Claim Fifteen, Porter has at least stated a claim that is seemingly not "frivolous or legally deficient on its face," *Hillyard Enters.*, 2003 U.S. Dist. LEXIS 27920, at *13. In the interest of freely granting leave to amend, the Court thus GRANTS Porter leave to amend his Petition to include Claim Fifteen.

3. Claim Sixteen

In Claim Sixteen, Porter argues that his trial counsel failed to adequately investigate the shooting of Officer Reaves, and that an adequate investigation would have led to a statement from Valorie Arrington that she entered into a quid pro quo agreement with the Commonwealth. Porter has attached an affidavit from Arrington to his Motion in which she states that she initially told two prosecutors that she "did not know Thomas Porter and had nothing to say about the matter" (Porter's Add. Claims Ex. A (Arrington Aff.) ¶ 2.)  However, after Arrington's then-boyfriend, who was in jail in Norfolk at the time, came up in conversation, Arrington "clearly conveyed" to the prosecutors the message, "I'll help you if you help me." (*Id.*) Arrington states that the prosecutors agreed to help get her boyfriend released from jail, and that they then discussed her testimony. Arrington claims that her boyfriend was released shortly thereafter, and she subsequently testified at Porter's trial.

Porter argues that evidence of this quid pro quo would have impeached Arrington by showing a bias or interest in testifying for the prosecution. Porter further maintains that this evidence would also have impeached the other four women who testified about the events in Arrington's apartment, particularly April Phillips who also denied knowledge of the shooting at first. Porter claims that the alleged quid pro quo is highly relevant to Claim Five, in which he argues that trial counsel failed to sufficiently rebut Latoria Arrington's

testimony, because the jury may have found Latoria less credible if they knew of her mother's quid pro quo. Accordingly, Porter asserts cumulative prejudice with Claim Five.

Porter claims that it was unreasonable for state habeas counsel not to raise this claim because counsel did raise ineffective assistance claims on state habeas regarding trial counsels' investigation into the mitigating and aggravating evidence, and Porter argues that trial counsels' investigation during the guilt phase was even more deficient. Accordingly, Porter states that "it is baffling why habeas counsel would not bother to assert an even more substantial and meritorious claim of ineffective investigation relating to the guilt phase." (Porter's Add. Claims. 14.) Porter reasserts his claim that he was prejudiced by his state habeas counsel's deficient performance under *Cronic*, and also alleges that "state habeas counsel's deficient performance clearly prejudiced Porter by failing to assert a substantial and meritorious ineffective-assistance-of-trial-counsel claim." (*Id.*)

In response, the Warden argues that leave to amend would be futile because the underlying ineffective assistance of trial counsel claim does not have merit. Specifically, the Warden argues that even if trial counsel had uncovered the alleged quid pro quo by further investigating, there is no reasonable probability that the outcome of Porter's trial would be different even if the jury had disbelieved Valorie Arrington based on this evidence. The Warden asserts that Porter would not have been prejudiced, firstly, because the other four women testified consistently, and secondly, because Valorie's account was the least detailed since she never testified that Porter was aware that Officer Reaves was outside when he left the apartment, the most emphasized fact elicited from any of the women's testimony. The Warden argues that Porter merely speculates that the evidence would also have impeached the other four women given their relationships with Valorie Arrington.

As with Claims Fourteen and Fifteen, Claim Sixteen presents a claim under *Martinez* that is at least not "frivolous or legally deficient on its face," *Hillyard Enters.*, 2003 U.S. Dist. LEXIS 27920, at *13, and the Court will not deny leave to amend due to futility. Accordingly, the Court GRANTS Porter leave to amend his Petition to include Claim Sixteen.

4. Claim Seventeen

In Claim Seventeen, Porter alleges that the prosecution violated its obligation under *Brady* to disclose evidence of its alleged quid pro quo agreement with Valorie Arrington, which could have been used to impeach Valorie Arrington as well as the other four women in her apartment. Porter argues that the state's suppression of the relevant evidence, which Porter claims is material under *Brady*, establishes cause and prejudice excusing the procedural default of this *Brady* claim under *Banks v. Dretke*, 540 U.S. 668, 691 (2004).

In response, the Warden asserts that *Banks* relied on a three-factor test for cause articulated in *Strickler v. Greene*, 527 U.S. 263, 289 (1999): "(a) the prosecution withheld exculpatory [or impeaching] evidence; (b) petitioner reasonably relied on the prosecution's open file policy as fulfilling the prosecution's duty to disclose such evidence; and (c) the [State] confirmed petitioner's reliance on the open file policy during state habeas proceedings that petitioner had already received everything known to the government." *Banks*, 540 U.S. at 692 (citing *Strickler*). The Warden argues that Porter has not established cause because he makes no argument that the Commonwealth had an open file policy or that prosecutors gave any blanket assurances that they would disclose exculpatory evidence. The Warden also maintains that Porter cannot show that the information was material under *Brady* for the same reason Porter cannot show that he was prejudiced in Claim Sixteen by his attorney's failure to discover the quid pro quo, namely that the

evidence would not have impeached the testimony of Valorie Arrington or the other four women. Accordingly, the Warden asserts that Porter cannot show that he was prejudiced by any *Brady* violation, and he further argues that Porter cannot make this argument consistently with Claim Sixteen, because if "his trial counsel should have discovered the information on their own, then no *Brady* violation occurred." (Warden's Supp. Reply 17.)

While the Warden rightly points out that Porter has alleged only the first factor in *Strickler*, the Court will not deny leave to amend on the ground of futility since Porter has at least not pled a claim that is "frivolous or legally deficient on its face,"[3] *Hillyard Enters.*, 2003 U.S. Dist. LEXIS 27920, at *13. Accordingly, the Court GRANTS Porter leave to amend his Petition to include Claim Seventeen.

### C.  *Bad Faith as a  Ground for Denial of Leave to Amend*

Although the parties primarily discuss whether the proposed amendments would be futile, the Warden also asserts that Porter has showed bad faith and dilatory motive in seeking an undue delay, and that leave to amend should also be denied for this reason. *See Foman*, 371 U.S. at 182. The Warden argues that the filing of this Motion on the day that the statute of limitations was to expire under Porter's calculation and Porter's request that the Court make an immediate ruling both show bad faith. Further, the Warden argues that, in light of the fact that the Court previously denied Porter's earlier motions for an extension of

---

[3] While *Banks* and *Strickler* both relied on the three factors found in *Strickler* to conclude that the petitioner in each case had established cause for defaulting his *Brady* claim, the Court declined to decide whether any one or two of the factors would suffice to demonstrate cause. *Strickler*, 527 U.S. at 289 ("We need not decide in this case whether any one or two of these factors would be sufficient to constitute cause, since the combination of all three surely suffices"); *see Banks,* 540 U.S. at 693 n.13 (same). Accordingly, Porter's failure to allege the latter two factors cannot render the pleading insufficient under Rule 12(b)(6) in light of the fact that the United States Supreme Court has declined to decide whether all three factors are necessary.

time and page length, the present Motion is an attempt to circumvent the previously imposed limitations on Porter's Petition or to get the Court to reconsider its decisions despite no change or misunderstanding of the relevant facts or law. Lastly, the Warden argues that a motion to amend may properly be denied if allowing the amendment would violate the Court's scheduling order or the amended pleading would assert an entirely new theory of the case. *See Parker v. Joe Lujan Enters., Inc.*, 848 F.2d 118, 121 (9th Cir. Guam 1988)(holding that a failure to comply with the court's scheduling order in this tort case was one ground supporting the decision to deny leave to amend).

The Court will decline to deny Porter leave to amend on this ground because there is no explicit evidence of bad faith in this case. Although amendment at this point would allow Porter more time than the February 19, 2013 deadline he sought in his first motion for an extension, Porter did indicate in his September 20, 2012 motions[4] that he intended to investigate whether any claims existed under *Martinez*, and counsel sought funds for an investigator to pursue these potential claims. The Court did not rule on the merits of Porter's request for investigative assistance because he sought leave to file the request *ex parte*; after the Court denied leave to proceed *ex parte*, Porter chose not to otherwise submit a request for an investigator. However, Porter's counsel represents that he ultimately paid for an investigator on his own (Mem. Supp. Leave to Amend 5 n.2, ECF No. 45), and thus, there is some support for counsel's claim that he has been continually investigating the *Martinez* claims.

On the other hand, Porter submitted his second request for additional time to separately file his procedurally defaulted claims on October 9, 2012, the day that the

---

[4] The Order denying these motions for additional time and pages (ECF No. 16) advised Porter that the Court would request supplemental briefing if necessary.

Petition was due. In addition, Porter could have responded, and to some extent did respond (*see* Opp. Mot. Dismiss 29 n.38, ECF No. 42), to the Warden's arguments that Claims Five, Eight, Nine, and Ten were procedurally defaulted in his response to the Warden's Motion to Dismiss, rather than seeking leave to amend the Petition with respect to these claims.

Nonetheless, the Motion does not seem to have been filed merely for the purpose of defeating the Motion to Dismiss, and there is no explicit evidence that Porter could have developed and presented the four additional claims earlier. *See Sandcrest Outpatient Serv., P.A. v. Cumberland Cnty. Hosp.*, 853 F.2d 1139, 1149 (4th Cir. 1988)(affirming the denial of leave to amend where the proposed amendment appeared "to have been an after-thought by appellant, possibly prompted only by the concern that it would lose on the summary judgment motion"); *Googerdy v. N.C. Agric. & Tech. State Univ.*, 386 F.Supp.2d 618, 622-24 (M.D.N.C. 2005)(denying leave to amend partly because the plaintiff admitted to moving to amend in order to defeat the defendant's pending motion to dismiss). Accordingly, there is insufficient proof of bad faith in this case to deny leave to amend on this ground.

## IV.   CONCLUSION

For the above reasons, the Court GRANTS IN PART and DENIES IN PART Porter's Motion for Leave to Amend. Specifically, the Court DENIES Porter's Motion for leave to Amend Claims Five, Eight, Nine, and Ten, and GRANTS Porter's Motion for Leave to Amend his Petition to include Claims Fourteen, Fifteen, Sixteen, and Seventeen.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate order shall issue.

ENTERED this __2nd__ day of May 2013.

_____/s/_____
James R. Spencer
United States District Judge