IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

THOMAS ALEXANDER PORTER,

Petitioner,

v.

KEITH W. DAVIS,
Respondent, Sussex I State Prison

Respondent.

Civil Action No. 3:12-CV-550-JRS

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) (ECF No. 79) ("Motion") filed by Thomas Alexander Porter ("Petitioner"). Petitioner requests that the Court vacate it Memorandum Opinion and Order of August 21, 2014 (ECF Nos. 77, 78), which granted Respondent Keith W. Davis's ("Respondent") Motion to Dismiss (ECF No. 57). The Respondent opposes the Motion. For the reasons below, the Court DENIES Petitioner's Motion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The following is a brief summary of the facts and procedural history relevant to the present Motion. On March 14, 2007, Petitioner was convicted by a jury in the Circuit Court for Arlington County of the capital murder of Norfolk Police Officer Stanley Reaves, use of a firearm in the commission of a murder, and grand larceny of a firearm. On the afternoon of October 28, 2005, Petitioner and another man, Reginald Copeland, traveled to a Norfolk apartment complex to inquire about purchasing marijuana. They entered the apartment of Copeland's acquaintance, Valorie Arrington, where her two daughters, two cousins, sister, and niece were also present. Petitioner eventually began arguing with the women over the marijuana and brandished a semi-automatic pistol concealed on his person. Copeland exited the apartment, with Petitioner locking the door behind him, and then left the complex. After walking a few

1

blocks, Copeland came across three uniformed police officers, including Officer Reaves, and reported Petitioner's behavior to the officers. Officer Reaves then drove to the complex with Copeland following on foot. As Officer Reaves exited his vehicle and approached the building, he encountered Petitioner on the sidewalk in front of the complex. Officer Reaves confronted Petitioner by grabbing his left arm, and instructed Petitioner to take his hands out of his pockets. Petitioner drew the pistol concealed in his pocket and shot Officer Reaves three times, killing him. Petitioner then took Officer Reaves' service revolver and fled.

At trial, the prosecution argued that Petitioner was guilty of capital murder under Va. Code. § 18.2-31.6 because he intentionally killed Officer Reaves in order to interfere with the performance of his official duties. Specifically, the prosecution argued that Petitioner, who was already a convicted felon and knew that he could be sent back to jail if found in possession of a firearm, shot Officer Reaves to prevent Officer Reaves from arresting him for being a felon carrying a firearm. Petitioner did not deny shooting Officer Reaves, but claimed that he did so because Officer Reaves pulled his service revolver on him, causing Petitioner to fear for his life and safety. A key issue argued at the guilt phase was at what point Petitioner knew that there was a police officer outside the complex whom he might encounter, and thus, when he could have formed the intent to interfere with a police officer engaged in his official duties. Valorie Arrington's daughter Latoria testified that before Petitioner left the apartment, she stated aloud that she could see Copeland and Officer Reaves talking outside through the apartment window. Valorie testified that when Petitioner left, he ran out of the apartment and down the building stairs quickly. Valorie's sister, Monika Arrington, and her cousins, Monica Dickens and April Phillips, testified, corroborating Valorie and Latoria's accounts.

The Commonwealth sought the death penalty under Va. Code Ann. § 19.2-264.2[1] based on Petitioner's "future dangerousness," namely the probability that he would commit acts of

---

[1] "[A] sentence of death shall not be imposed unless the court or jury shall (1) after consideration of the past criminal record of convictions of the defendant, find that there is a probability that the

violence constituting a continuing serious threat to society. Petitioner argued in closing arguments that, in considering the probability that he would commit violent criminal acts constituting a serious threat to society, the term "society" meant prison society since Petitioner would spend the rest of his life incarcerated without parole if not sentenced to death. *Porter v. Commonwealth (Porter I)*, 661 S.E.2d 415, 442 (Va. 2008). The Commonwealth objected, and the trial court instructed the jury that: "Society is everything. Everybody, anywhere, anyplace, anytime." (SH App. 4169.) Petitioner's counsel then continued that the jury should focus on the fact that society incorporates persons within the penitentiary system, and after the Commonwealth again objected, the trial court instructed that: "Virginia law is very clear. Society is everyone, everywhere. You are not required to simply consider what may happen in a penitentiary. You are required to consider society. It's a definitional word. It's not that complex to start with. It means everybody, everywhere, any place, any time. It's pretty simple." (SH App. 4172.) Trial counsel did not object at the time, but orally moved for a mistrial at the end of closing argument based on these instructions, which the trial court denied. Petitioner also moved for the appointment of a risk assessment expert to rebut the evidence of his future dangerousness, but this motion was denied.

The jury convicted Petitioner of all counts, and at the penalty phase, found the future dangerousness aggravating factor. The jury sentenced Petitioner to death for the capital murder conviction and to a total of twenty-two (22) years of imprisonment for the non-capital offenses. The Virginia Supreme Court found the following facts regarding the sentencing phase of trial:

> During the penalty stage of the proceedings, the Commonwealth presented evidence in aggravation, which included Petitioner's prior convictions of misdemeanor carrying a concealed weapon in 1994, felony robbery and use of a firearm during the commission of a felony in 1994, misdemeanor disturbing the peace, misdemeanor assault and battery and misdemeanor threatening a police officer and resisting arrest in 1996, felony possession of heroin, felony possession of a firearm with drugs, and felony possession of a firearm by a convicted felon in

---

defendant would commit criminal acts of violence that would constitute a continuing serious threat to society. . . " § 19.2-264.2; *see* § 19.2-264.4(C).

1997, misdemeanor assault and battery in 1997, and misdemeanor obstruction of justice in 2005. The Commonwealth presented evidence of several incidents while Petitioner was incarcerated, including altercations between Petitioner, fellow inmates, and prison guards. The Commonwealth also introduced audiotapes of portions of two telephone conversations between Petitioner and an unidentified female recorded during Petitioner's incarceration, which the Commonwealth introduced because they "are directly relevant to the issue of the defendant's lack of remorse" and included Petitioner bragging that he was a "good shot."

The Commonwealth also introduced the testimony of Officer Reaves' wife and sister, and each described the devastating impact of Officer Reaves' death upon his extended family. Petitioner presented mitigation evidence which included testimony of his mother and sister as to his childhood, family life and educational background.

*Porter I,* 661 S.E.2d at 424. On July 16, 2007, the Circuit Court for the City of Norfolk imposed the jury's sentences and entered final judgment on July 18, 2007.

On August 13, 2007, Petitioner appealed his capital murder conviction and death sentence to the Supreme Court of Virginia, which affirmed the judgment on June 6, 2008, *see Porter I.* Petitioner then petitioned the United States Supreme Court for a writ of certiorari, which was denied on April 20, 2009. On August 10, 2009, Petitioner filed a petition for state habeas post-conviction relief in the Supreme Court of Virginia, raising several claims of ineffective assistance of trial counsel under *Strickland v. Washington,* 466 U.S. 668, 687 (1984), among other claims. The Respondent moved to dismiss the state habeas petition, and after the production of relevant work-product from Petitioner's trial counsel relating to the ineffective assistance claims, and a supplemental motion to dismiss, the Virginia Supreme Court dismissed Petitioner's petition on March 2, 2012. *See Porter v. Warden of the Sussex I State Prison (Porter II),* 722 S.E.2d 534 (Va. 2012). The Court denied Petitioner's petition for a rehearing on April 28, 2011, and the trial court set Petitioner's execution for August 2, 2012.

Petitioner filed a motion for a stay of the execution in this Court on July 27, 2012, and the Court granted a stay of ninety (90) days on July 30, 2012. The Court also directed Petitioner to file his petition, not to exceed eighty (80) pages, within seventy (70) days. On July 31, 2012,

by Petitioner's Motion, the Court appointed two attorneys as counsel, one of whom had also represented Petitioner in his state habeas proceedings. Petitioner moved for an extension of time and for an extension of the page limit on September 20, 2012, and the Court denied both motions on September 25, 2012. On October 9, 2012, the date his Petition was due, Petitioner filed a second motion for an extension of time until February 19, 2013, or alternatively, an additional sixty (60) days to file his procedurally defaulted claims.

The Motion was filed by one of Petitioner's appointed counsel individually seeking to prepare claims that Petitioner's state habeas counsel—Petitioner's other appointed counsel in this Court—provided ineffective assistance by failing to raise claims of ineffective assistance of *trial* counsel in the state habeas proceedings, arguing that the default of the underlying ineffective assistance claims was excused in light of the recently decided *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) (holding that the ineffective assistance of initial post-conviction review counsel may establish cause for defaulting an ineffective assistance of trial counsel claim). Petitioner filed his Amended Petition on May 9, 2013. Petitioner's Petition included seventeen claims that can be divided into exhausted claims and those that have not been procedurally defaulted. The Exhausted claims included, in relevant part, claims that: 1) Counsel Unreasonably Failed to Obtain a Jury Instruction on First-Degree Murder (Claim VI) and 2) Trial Counsel Failed to Investigate Officer Reaves's History of Unprofessional Conduct (Claim VII).

The Respondent moved to dismiss the Petition on June 3, 2013. ECF No. 57. On August 21, 2014, the Court granted Respondent's motion to dismiss. *See* ECF Nos. 77, 78. On September 17, 2014, Petitioner filed the instant motion to alter judgment under Rule 59(e). ECF. No. 79. The Respondent responded on September 29, 2014. Petitioner did not file a reply.

## II.   LEGAL STANDARD

Rule 59(e) of the Federal Rules of Civil Procedure governs motions to alter or amend a judgment. The Rule simply provides, "[a] motion to alter or amend a judgment must be filed no

later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e); *see also Lee-Thomas v. Prince George's Cnty. Pub. Sch.,* 666 F.3d 244, 247 n.4 (4th Cir. 2012); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 471 n.4 (4th Cir. 2011). Under Rule 59(e), it is well settled—and the Fourth Circuit has reiterated—that motions to alter or amend judgment may be granted in only three circumstances: in order "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Zinkand v. Brown,* 478 F.3d 634, 637 (4th Cir. 2007; *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir. 1998) (citations omitted); *Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir. 1993). A Rule 59(e) motion is not intended to permit a disgruntled litigant to relitigate "the very issues that the court has previously decided." *Delong v. Thompson,* 790 F. Supp. 594, 618 (E.D. Va. 1991), *aff'd,* 1993 U.S. App. LEXIS 1941 (4th Cir. 1993) (quoting *Durkin v. Taylor,* 444 F. Supp. 879, 888 (E.D. Va. 1977)). Mere disagreement with the Court's legal conclusion does not constitute clear error or manifestly unjust application of law. *Hutchinson,* 994 F.2d at 1081-82. So, where the Rule 59(e) motion presents nothing other than the petitioner's displeasure with the Court's ruling, the Court "has no proper basis upon which to alter or amend the order previously entered." *Delong,* 790 F. Supp. at 618. In sum, a Rule 59(e) motion is "an extraordinary remedy which should be used sparingly." *Pac. Ins. Co.,* 148 F.3d at 403.

## III.   DISCUSSION

Petitioner's Motion focuses largely on his assertion that the Court "misapprehended or misunderstood the facts" and erroneously based its judgment on its misunderstanding. Petitioner's Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) ("Pet.'s Mot.") at 1-2 (quoting *Barber ex rel. Barber v. Colorado Dep't Revenue,* 562 F.3d 1222, 1228 (10th Cir. 2009). Petitioner asserts three related alleged "clear errors that affected this Court's decision": (1) the Court erred in finding that Petitioner's trial counsel did not pursue a self-defense argument; (2) the Court erred in finding that Petitioner's trial counsel

6

reasonably did not seek a first-degree instruction because it would have been contrary to the argument that Petitioner did not premeditate killing Officer Reaves; and (3) the Court erred in applying the "notion" that Petitioner's trial counsel consistently argued his lack of premeditation as part of their strategy. *Id.* at 3-5.

However, looking to the *Hutchinson* factors applied to motions to alter or amend judgment under Rule 59(e) guidance, Petitioner does not present any proper grounds in support of amending the Court's earlier judgment. Contrary to Petitioner's assertion, there has been no misapprehension or misunderstanding of facts. Rather, the Court and Petitioner have a different view as to import of the facts and their impact on the relevant legal analysis. After considering the pleadings filed by both parties, it's clear that the Respondent better understands the Court's reasoning.

## IV. Conclusion

For the reasons above, the Court DENIES the Motion (ECF No. 79).

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record. An appropriate Order shall issue.

/s/
James R. Spencer
Senior U. S. District Judge

ENTERED this _16th_ day of October 2014