IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THOMAS ALEXANDER PORTER,

      Petitioner,

v.                                     Civil Action No. **3:12CV550**

DAVID ZOOK,

      Respondent.

## MEMORANDUM OPINION

Thomas Alexander Porter filed this petition for habeas corpus under 28 U.S.C. § 2254 challenging his capital murder conviction and death sentence for the 2005 shooting death of a Norfolk police officer.[1]  By Memorandum Opinion and Order entered on August 21, 2014, the Court granted Respondent's Motion to Dismiss the § 2254 Petition. *See Porter v. Davis*, No. 3:12–CV–550–JRS, 2014 WL 4182677, at *1 (E.D. Va. Aug. 21, 2014).  Porter appealed.

On October 20, 2015, the United States Court of Appeals for the Fourth Circuit dismissed Porter's appeal and remanded the matter back to this Court. *See Porter v. Zook*, 803 F.3d 694, 695 (4th Cir. 2015).  The Fourth Circuit observed that, "[a]mong the multiple claims Porter presented to the district court was one alleging that a juror[2] in his case was 'actually biased,' in violation of his right to trial by an impartial jury." *Id.* (citing *Smith v. Phillips*, 455 U.S. 209, 215 (1982)).  The Fourth Circuit noted that, "[b]ecause the district court did not resolve [the actual bias] claim, its decision was not a final order over which we have jurisdiction" and remanded the matter to this Court. *Id.*

Thereafter, by Memorandum Order entered on October 29, 2015, the Court directed the parties to submit further briefing that set forth all of the facts, law, and argument with respect to

---

[1] The Court has amended the caption to reflect Porter's current custodian.

[2] The juror's name is Bruce Treakle.

the actual bias claim. For the reasons set forth below, the Court finds: (1) that Porter exhausted

his actual bias claim by fairly presenting the same to the Supreme Court of Virginia; (2) that the

Supreme Court of Virginia decided the merits of the actual bias claim;[3] and, (3) that under either

the deferential standard set forth in 28 U.S.C. § 2254(d)(1)–(2), or a *de novo* standard of review,

the actual bias claim lacks merit and may be dismissed without conducting an evidentiary

hearing.

## I. The Applicable Constraints upon Federal Habeas Corpus Review

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that

he is "in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996

further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus.

Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted

only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008)

(citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may

not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state

court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a

federal court believes the state court's determination was incorrect but whether that

---

[3] As reflected below, it is fairly apparent simply by reviewing the procedural history that
Porter raised the actual bias claim before the Supreme Court of Virginia and that the Supreme
Court of Virginia resolved the merits of the claim when it rejected a separate ineffective
assistance of counsel claim.

determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## II. Factual and Procedural Background Regarding the Actual Bias Claim

Porter was charged and ultimately convicted of the capital murder of Stanley Reaves, a Norfolk Police Officer. *See Porter v. Commonwealth*, 661 S.E.2d 415, 419–24 (Va. 2008). Porter moved for a change of venue from the Circuit Court for the City of Norfolk to the Circuit Court for the County of Arlington.[4] *Id.* at 423. The Norfolk Circuit Court granted the motion and transferred Porter's trial to the Circuit Court of the County of Arlington ("Circuit Court"). *Id.*

### A. Pertinent Voir Dire with Respect to Law Enforcement Officers

At the inception of voir dire, the Circuit Court informed the venire that Porter was charged with the capital murder of a Norfolk police officer. (State Habeas Record ("SH") 1197, 1201.) Juror Treakle and the rest of the venire assured the Circuit Court that they were not aware of any bias or prejudice against the Commonwealth or the accused. (SH 1202.) Defense counsel asked the venire:

> Have you, any member of your family or close personal friend worked for or with any law enforcement organization, either as an employee or on a volunteer basis?
>     . . . .

---

[4] The Fourth Circuit noted that:

> As was to be expected, Officer Reaves's senseless killing provoked widespread mourning and outrage in Norfolk and the surrounding communities. The killing also generated extensive media coverage, both during the manhunt for Porter and after his apprehension and indictment. Citing concerns about the ability to empanel an impartial jury in Norfolk, Porter filed a motion for a change of venue, to which the Commonwealth consented.

*Porter v. Zook*, 803 F.3d 694, 696 (4th Cir. 2015)

> . . . [I]s anyone here, or a member of your close personal family, worked
> in law enforcement in any capacity as a volunteer or an employee?

(SH 1224–25.) A number of jurors raised their hands and then the following exchange occurred:

> MR. MIGLIOZZI:  I'm going to start in the back row.  Mr. Treakle.
>
> MR. TREAKLE:  My nephew is an Arlington County police officer.
>
> MR. MIGLIOZZI:  Your nephew?
>
> MR. TREAKLE:  Yes.
>
> MR. MIGLIOZZI:  In this county here?
>
> MR. TREAKLE:  Yes.
>
> MR. MIGLIOZZI:  Do you think, with that being the case, that that would impair
> your ability to sit on this jury and render a fair and impartial verdict in this case?
>
> MR. TREAKLE:  No.

(SH 1225–26.) Defense counsel then proceeded to question briefly the other seven members of the venire who had raised their hands. (SH 1226–29.)

Although Porter now suggests that exploring the nuances of each venire person's relationships with, and any empathy for, law enforcement officials was critical to assessing whether a juror could remain impartial, the contemporaneous voir dire suggests otherwise. As reflected in the below exchange, the attorneys trying the case and who were most familiar with the facts were content with a general reassurance from the venire person that any relationship he or she had with law enforcement officials would not impair his or her ability to render a fair and impartial verdict:

> MR. SHARP:  My uncle is a retired NYPD officer.
>
> MR. MIGLIOZZI:  Okay.  Knowing that, and that this involves the alleged
> shooting of a police officer, would you have any -- do you believe that those facts
> and that relationship would impair your ability to sit and render a fair and
> impartial verdict in this case?

4

MR. SHARP: No.

MR. MIGLIOZZI: Mr. Hurley.

MR. HURLEY: I was a consultant to the U.S. Department of Housing & Urban Development, and part of my job was to develop security plans for public housing projects. And I was in charge of the law enforcement and in charge of keeping the places safe.

MR. MIGLIOZZI: Okay. Same question as everyone else. Do you think that that would impair your ability to sit in a case such as this?

MR. HURLEY: No.

MR. MIGLIOZZI: Thank you. Mr. Delaney.

MR. DELANEY: My cousin is a prison guard in Erie, Pennsylvania, but it doesn't impair my ability.

MR. MIGLIOZZI: And I will go down the front row. Mr. Zacate.

MR. ZACATE: Yes. My cousin is a Metropolitan police officer, D.C.

MR. MIGLIOZZI: Same question to you. Do you think that would affect your ability to sit --

MR. ZACATE: No.

MR. MIGLIOZZI: -- on this jury?

MR. ZACATE: No.

MR. MIGLIOZZI: All right. Any more hands?

(SH 1228–29.)

Additional voir dire provided assurance that the jurors, including Bruce Treakle, could remain impartial in deciding the appropriate punishment despite the fact the case involved the capital murder of a police officer. Specifically, the Circuit Court broke the venire down into groups of four persons to pose specific questions about their ability to fairly decide a capital case. During that questioning, Treakle repeatedly assured the Circuit Court that he could remain

impartial and follow the Circuit Court's instructions, even though the case involved the capital murder of a police officer. (SH 1285–94.) For example, defense counsel reminded Treakle that the case involved the capital murder of a police officer (SH 1285) and asked, "If you should convict, the defendant, Mr. Porter, of capital murder, could you follow the Court's instructions and consider voting for a sentence of less than the death penalty." (SH 1292.) Treakle responded, "Yes." (SH 1292.) Thereafter, defense counsel asked:

> If after you have already found that Mr. Porter is guilty beyond a reasonable doubt of the willful, deliberate and premeditated killing of a police officer, you were then presented with evidence in aggravation that there was a probability that Mr. Porter would commit criminal acts of violence that would constitute a serious threat to society, could you follow your instructions and consider voting against the death penalty and in favor of a life sentence without parole?

(SH 1293.) Treakle responded in the affirmative. (SH 1293.) Treakle and the three other venire persons were also asked, "[D]o any of the four of you know of any reason why you could not or would not be able to fairly and impartially determine the facts of the case or abide by the instructions of the Court on the sentencing issues?" (SH 1290.) All four jurors responded in the negative. (SH 1290.)

**B. State Habeas Investigation**

Following Porter's conviction and direct appeal, members of Porter's state habeas team interviewed individuals who were members of Porter's jury. (SH 6214.) On May 30, 2009, Maryl Sattler and Dawn Davison spoke to Bruce Treakle. (SH 6214.) During the state habeas proceedings, Porter submitted an affidavit from Sattler memorializing her conversation with Bruce Treakle:

> Ms. Davison . . . explained to Mr. Treakle that we were there representing Thomas Porter, and that we were interviewing jurors as part of our review of the entire case. Mr. Treakle indicated that he understood and was willing to speak

with us.  He explained that he had to pick up his wife at 3:00 p.m., so he would only be available for a few minutes.

Ms. Davison asked Mr. Treakle which of the witnesses made the greatest impression on him during the trial.  Without hesitation, Mr. Treakle replied that he found the officer's wife (Treva Reaves) to be a very powerful witness.  He indicated that he found her testimony moving and very emotional for him because his brother is a sheriff's officer in Norfolk.[5]  We were very surprised by this statement because we had read his voir dire prior to the interview and Mr. Treakle had never said anything about this brother.  When Ms. Davison asked for clarification, Mr. Treakle repeated that this brother works for the sheriff's department "down in Norfolk."  Mr. Treakle said sitting through Mrs. Reaves's testimony had been difficult for him.  He expressed sympathy for law enforcement officers, and emphasized that they put their lives on the line every day for the community.

We only spoke with Mr. Treakle for a short while.  At approximately 2:45 p.m. Mr. Treakle said that he wished he could speak with us longer, but he did not want to be late to pick his wife up from work at 3:00 p.m.  We thanked him for his time and left his home.

(SH 6215 (punctuation and spacing corrected) (paragraph numbers omitted).)  Porter asserts that

when his "representatives returned to visit again with [Bruce] Treakle, he refused to speak

further." (Porter Br. 6, ECF No. 93.)

On June 18, 2009, Ms. Davison also obtained an affidavit from Bruce Treakle's brother,

Pernell Treakle.  (SH 5491.)  Pernell stated that he is a Deputy Sheriff with the Chesapeake

Sheriff's Office in Chesapeake, Virginia and had been employed in that position for the past nine

years.  (SH 5491.)

Porter notes that Chesapeake is adjacent to Norfolk and that the Chesapeake law

enforcement personnel were involved in the manhunt for Porter and "were outspoken in their

grief and support for Officer Reaves and his family."  (Porter Br. 4 (citing SH 7702–7804), ECF

No. 93.)  Despite his counsel's conversation with Bruce and Pernell Treakle, Porter has not

pointed the Court to any allegations that suggest Bruce and Pernell Treakle discussed anything

---

[5] As reflected below, Bruce Treakle's brother, Pernell Treakle, actually worked for the Sheriff's Office in Chesapeake, Virginia.  It is not clear from the record whether Bruce Treakle simply misspoke or whether he simply did not know the exact identity of his brother's employer.

about Porter's crimes prior to Porter's trial.  Moreover, during voir dire, in response to the

Circuit Court's questions, Bruce Treakle and the rest of the venire assured the Court that they

had not seen or heard "anything about this case either today or any other time." (SH 1202.)

### C.  State Habeas Proceedings with Respect to the Juror Bias Claim

During the state habeas proceedings, with respect to the juror bias claim, Porter asserted,

in pertinent part:

> Treakle's relationship with his brother impacted his participation at
> Porter's trial.  For example, he found Officer Reaves's widow to be a very
> powerful witness.  He found her testimony moving and very emotional precisely
> because his brother was an [law enforcement officer, "LEO"] in the Norfolk
> area. . . .  Treakle was not a fair and impartial juror, and his concealment of his
> relationship with a Chesapeake LEO was intentionally misleading.  As a result,
> Porter could not conduct a meaningful voir dire and was unaware of this basis for
> a peremptory strike or causal challenge.
> There are three alternative legal theories of juror bias.  First, the juror may
> be actually biased.  The test is whether the juror in fact was not fair and impartial.
> *Smith v. Phillips*, 455 U.S. 209 (1982); *Rushen v. Spain*, 464 U.S. 114 (1983).
> Second, bias may be implied.  *United States v. Wood*, 299 U.S. 123, 133 (1936)
> (juror's bias "may be actual or implied; that is, it may be bias in fact or bias
> conclusively presumed as a matter of law"); *Smith*, 455 U.S. at 221–22
> (O'Connor, J., concurring).  Third, the juror's silence can foreclose counsel's
> ability to conduct an adequate voir dire.  At a minimum, relief is warranted if the
> juror failed to answer a material question honestly and a correct response would
> have provided a valid basis for a causal challenge.  *McDonough Power
> Equipment v. Greenwood*, 464 U.S. 548 (1984).  Juror lies can be [a] sufficient
> basis for relief even absent proof that the juror would have been excludable for
> cause.  "[W]hen possible non-objectivity is secreted and compounded by the
> untruthfulness of a potential juror's answers on voir dire, the result is a
> deprivation of the defendant's right to fair trial."  *United States v. Bynum*, 643
> F.2d 768, 771 (4th Cir. 1980).  Juror bias is a structural error and is not amenable
> to harmless error analysis.  *Arizona v. Fulminate*, 499 U.S. 279 (1991).

(SH 109–10 (last alteration in original) (footnote omitted).)

Initially, the Supreme Court of Virginia relied upon the *McDonough* test to reject Porter's

juror bias claim:

> In determining whether to grant a new trial based on an allegation that a
> juror was dishonest during voir dire, this Court applies the two-part test

enunciated in *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 104 S. Ct. 845, 78 L.Ed.2d 663 (1984), which states that

> to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*Id.* at 556, 104 S. Ct. 845.

In this case, defense counsel, Joseph A. Migliozzi, Jr., asked the jurors, "But is anyone here, or a member of your close personal family, worked in law enforcement in any capacity as a volunteer or an employee?" Several prospective jurors, including Juror T, raised hands in response. The entirety of the exchange with Juror T was as follows:

> [JUROR T]: My nephew is an Arlington County police officer.
> MR. MIGLIOZZI: Your nephew?
> [JUROR T]: Yes.
> MR. MIGLIOZZI: In this county here?
> [JUROR T]: Yes.
> MR. MIGLIOZZI: Do you think, with that being the case, that that would impair your ability to sit on this jury and render a fair and impartial verdict in this case?
> [JUROR T]: No.

Upon receiving Juror T's negative response, counsel moved on to the next prospective juror. The record demonstrates that Juror T answered truthfully that he had a nephew who was an Arlington County Police Officer, Arlington County being the jurisdiction where the case was being tried following a change of venue, and that he was not asked, nor did he have the opportunity to answer, if he had any additional relationships with law enforcement officers. Thus, petitioner has failed to demonstrate that Juror T *failed to answer honestly a material question during voir dire.*

*Porter v. Warden of Sussex I State Prison,* 722 S.E.2d 534, 539 (Va. 2012) (emphasis added).

The Supreme Court of Virginia did not address whether Bruce Treakle was actually biased in connection with the juror bias claim.

Porter, however, also raised a separate ineffective assistance of counsel claim with respect to Bruce Treakle. Specifically, Porter claimed that "he was denied the effective assistance of counsel because counsel failed to raise the claim that Juror T was biased due to his

brother's employment as a law enforcement officer at trial and on direct appeal." *Id.* at 549. The

Supreme Court of Virginia rejected this claim, noting it satisfied

> neither the "performance" nor the "prejudice" prong of the two-part test
> enunciated in *Strickland*. The record, including the trial transcript and the
> September 8, 2009 affidavit of counsel, demonstrates that counsel did not know
> that Juror T had a brother in law enforcement. More importantly, *petitioner has
> provided no admissible evidence that Juror T was biased against petitioner as a
> result of his brother's employment.* Petitioner has failed to demonstrate that
> counsel's performance was deficient or that there is a reasonable probability that,
> but for counsel's alleged error, the result of the proceeding would have been
> different.

*Id.* (emphasis added). In finding that Porter provided no admissible evidence of bias, the

Supreme Court of Virginia apparently relied upon "the general rule that the testimony of jurors

should not be received to impeach their verdict, especially on the ground of their own

misconduct." *Caterpillar Tractor Co. v. Hulvey*, 353 S.E.2d 747, 750–51 (Va. 1987) (citing

*Phillips v. Campbell*, 104 S.E.2d 765, 767–68 (Va. 1958)).

### D. Exhaustion

Respondent's argument that Porter failed to exhaust his juror bias claim is limited to a

discussion of the general jurisprudence regarding exhaustion. (Resp't's Br. 2–5, ECF No. 95.)

Respondent fails to cite to any particularly persuasive authority for the proposition that Porter's

citation of law and facts in his state habeas petition with respect to the issue of actual bias was

inadequate to exhaust his actual bias claim. Moreover, the relevant authority demonstrates that

Porter satisfied the exhaustion requirement with respect to his actual bias claim. *See Fullwood v.

Lee*, 290 F.3d 663, 676 n.4 (4th Cir. 2002) (concluding that petitioner satisfied the exhaustion

requirement with respect to his actual bias claim when, in state court, petitioner "framed the

issue primarily as one of juror misconduct based on the jurors' purportedly untruthful

affirmations during voir dire").

10

## E. Virginia Adjudicated the Merits of the Actual Bias Claim

The deferential standard of review found in 28 U.S.C. § 2254(d) only applies to claims

that were "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d).

Nevertheless, where, as here, a state court resolves the merits of the substantive constitutional

claim in the context of ineffective assistance of counsel, such a ruling constitutes an adjudication

on the merits of the separate substantive constitutional claim for purposes of 28 U.S.C.

§ 2255(d). *See Sturgeon v. Chandler*, 552 F.3d 604, 612 (7th Cir. 2009) (concluding that

because the state court held that "no bona fide doubt existed about [petitioner's] competency to

stand trial and therefore he had not established either prong of . . . *Strickland* . . . . The court

could not have decided the same 'bona fide doubt' question any differently in the context of

[petitioner's] due-process claim, so the merits were effectively reached"); *accord Albrecht v.

Horn*, 485 F.3d 103, 116 (3d Cir. 2007). Specifically, the Supreme Court of Virginia adjudicated

the merits of Porter's actual bias claim when it found that "petitioner has provided no admissible

evidence that Juror T was biased against petitioner as a result of his brother's employment."

*Porter*, 722 S.E.2d at 549.[6]

## F. Federal Habeas Proceedings

With respect to Porter's allegation concerning Juror Treakle, this Court stated in

pertinent part:

> In sum, Porter argues that the state habeas court erred when it held that
> Juror Treakle did not give a dishonest response or omit material information
> because Porter's trial counsel asked (1) whether Juror Treakle had any family that
> were law enforcement officers and (2) whether Juror Treakle had anything else to
> add. Porter's claim fails at the first step of the *McDonough* test. It is clear that
> Juror Treakle did not volunteer false information. The main question of import is
> whether Juror T's omission of an additional family member that was a law

---

[6] As explained below, Porter's failure to advance any competent evidence of juror bias is
fatal to his actual bias claim. *See Fullwood v. Lee*, 290 F.3d 663, 682 (4th Cir. 2002) (citation
omitted).

11

enforcement officer amounted to a "material omission." "*McDonough* provides for relief only where a juror gives a dishonest response to a question actually posed, not where a juror innocently fails to disclose information that might have been elicited by questions counsel did not ask." *See McDonough*, 464 U.S. at 555.

Juror Treakle's failure to advise that he had additional relationships with law enforcement officers did not amount to a deliberate omission of material information. In *Billings v. Polk*, the Fourth Circuit highlighted a set of acts in *Williams v. Taylor* that were indicative of a material omission. *Billings*, 441 F.3d at 244 n.2. There, a juror indicated that she was not related to any of the witnesses even though she had been married to one of them for 17 years and was the mother of his four children. *Id.* (citing *Williams*, 529 U.S. at 440). Additionally, the woman stated that she had never been represented by any of the attorneys even though one of them had represented her during her divorce. *Id.* (529 U.S. at 440–41). In comparison, it does not appear that any of Juror Treakle's answers were submitted with scienter in mind, i.e., "misleading, disingenuously technical, or otherwise indicative of an unwillingness to be forthcoming." *Id.* Porter's trial counsel simply failed to ask Juror Treakle whether he had additional family members that were law enforcement officers. *See Billings*, 441 F.3d at 245. On the other hand, if the Court assumes that Juror Treakle knew that his brother transported prisoners in the custody of the department of corrections, it is hard to believe that he could have not realized that such a position constituted "law enforcement in any capacity." *See Porter II*, 722 S.E.2d at 539. A Deputy Sheriff is clearly a law enforcement officer. *Williams*, 529 U.S. at 441–42. In any event, even if Porter meets the first step of the *McDonough* test, **he cannot show actual or implied bias on the part of Juror Treakle.**

The fact that a juror "once had a family member in law enforcement is plainly not one of the 'extreme situation[s]' in which bias may be implied." *United States v. Brewer*, No. 1:12CR1, 2012 WL 4757894, at *5 (N.D. W. Va. Oct. 5, 2012), *aff'd*, 533 F. App'x 234 (4th Cir. 2013) (quoting *Person v. Miller*, 854 F.2d 656, 664 (4th Cir. 1988)); *see also United States v. LaRouche*, 896 F.2d 815, 830 (4th Cir. 1990). Further, it appears that Porter's trial counsel and the trial court judge were convinced that Juror Treakle would act impartially because of his familial affiliation with another law enforcement officer. Porter now contends that Juror Treakle may have been biased because the city of Chesapeake and its law enforcement community were especially incited by the murder of Officer Reaves. Porter avers that Treakle's relationship with his brother impacted his perception of the evidence and his participation in deciding Porter's guilt and punishment. It may be true that officers from the Chesapeake Sherriff's Office were more involved in his case than officers in Arlington County. However, Porter presents only circumstantial evidence of bias, and a showing of implied bias is a very high bar.

"[T]he doctrine of implied bias is limited in application to those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain

impartial in his deliberations under the circumstances." *Person*, 854 F.2d at 664 (internal quotation marks and citations omitted). "As examples of the 'exceptional' and 'extraordinary' situations that might require a finding of implied bias, Justice O'Connor cited 'a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.'" *Fitzgerald v. Greene*, 150 F.3d 357, 365 (4th Cir. 1998) (citing *Smith*, 455 U.S. at 222) (O'Connor, J., concurring). Porter's is not such an egregious situation. There is no *per se* rule requiring the exclusion of a juror whose close relative was a victim of a crime similar to that with which a defendant is being tried, *see United States v. Jones*, 608 F.2d 1004, 1008 (4th Cir. 1979), and "[a]bsent a specific showing of bias, a defendant accused of murdering a police officer is not entitled to a jury free of policemen's relatives," *United States v. Caldwell*, 543 F.2d 1333, 1347 (D.C. Cir. 1974). *See also Jones*, 608 F.2d at 1008. Absent the general connection of the Chesapeake law enforcement officers to the victim, nothing indicates that any of Juror Treakle's relatives had a particularly close connection to the murder. On the information provided, the Court cannot hold that Porter has shown that it was "highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Person*, 854 F.2d at 664.

In sum, it does not appear that the state habeas court unreasonably applied established federal law. While Porter argues that the best way to clear up any discrepancies is to hold an evidentiary hearing, such measures are unnecessary. Because the Court can decide this matter on the record at hand, the Court will deny Porter's request for a hearing.

*Porter v. Davis*, 3:12–CV–550–JRS, 2014 WL 4182677, at *11–12 (E.D. Va. Aug. 21, 2014)

(alterations in original) (emphasis added).

### III. Analysis of the Actual Bias Claim

#### A. The Distinction between Extrinsic and Intrinsic Influences on Jurors

The Supreme Court has held "that the remedy for allegations of juror partiality is a

hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455

U.S. 209, 215 (1982). Contrary to Porter's suggestion, *Smith* does

not stand for the proposition that *any time* evidence of juror bias comes to light, due process requires the trial court to question the jurors alleged to have bias. *Smith* states that this "may" be the proper course, and that a hearing "is sufficient" to satisfy due process. *Smith* leaves open the door as to whether a hearing is always required and what else may be "sufficient" to alleviate any due process concerns.

13

*Tracey v. Palmateer*, 341 F.3d 1037, 1044 (9th Cir. 2003) (citation omitted). "In deciphering what due process requires, [the courts] distinguish[] between an extraneous contact that may have affected a jury's ability to remain fair and impartial and an intrinsic influence from a juror's pre-existing bias." *United States v. McClinton*, 135 F.3d 1178, 1186 (7th Cir. 1998).[7]

When substantial extraneous contacts may have affected a jury's ability to be fair, due process mandates a hearing. *Id.* (citing *Willard v. Pearson*, 823 F.2d 1141, 1148 (7th Cir. 1987)); *see Hurst v. Joyner*, 757 F.3d 389, 398–400 (4th Cir. 2014) (alteration in original) (remanding for an evidentiary hearing, when, during trial for a capital defendant, juror "asked her father where she 'could look in the Bible for help and guidance in making [her] decision for between life and death'" and he directed her to an "undetermined 'eye for an eye' verse, which she consulted in private the night before returning the verdict"), *cert. denied*, 135 S. Ct. 2643 (2015); *Barnes v. Joyner*, 751 F.3d 229, 244 (4th Cir. 2014) (holding that "a defendant is entitled to a hearing when he or she presents a credible allegation of communications or contact between a third party and a juror concerning the matter pending before the jury"), *cert. denied*, 135 S. Ct. 2643 (2015). The foregoing rule favoring post-trial hearings "applies only to prejudicial extraneous contacts, not to preexisting juror bias." *United States v. Benabe*, 654 F.3d 753, 780 (7th Cir. 2011) (citing *McClinton*, 135 F.3d at 1186; *Artis v. Hitachi Zosen Clearing Inc.*, 967 F.2d 1132, 1141 (7th Cir. 1992)); *Robinson v. Polk*, 438 F.3d 350, 363–64 (4th Cir. 2006) (emphasizing the importance of distinguishing between internal and external influences upon a jury);[8] *Stockton v. Virginia*, 852 F.2d 740, 744 (4th Cir. 1988) (distinguishing between "juror

---

[7] Courts use the terms external contacts and external influences interchangeably.

[8] In *Robinson*, the Fourth Circuit concluded that no evidentiary hearing was warranted when one juror read passages from the Bible to other jurors because the Bible was not deemed to be an external influence. 438 F.3d at 363–64.

14

impairment or predisposition" and the more serious danger of an "extraneous communication").[9]
"A post-verdict inquiry into intrinsic juror influences is almost never justified." *Benabe*, 654
F.3d at 780 (citing Fed. R. Evid. 606(b); *Tanner v. United States*, 483 U.S. 107, 117–20 (1987);
*Arreola v. Choudry*, 533 F.3d 601, 606 (7th Cir. 2008)); *see Marquez v. City of Albuquerque*,
399 F.3d 1216, 1223 (10th Cir. 2005) (internal quotation marks omitted) (citation omitted) ("A
juror's personal experience . . . does not constitute extraneous prejudicial information.").[10]
Rather, the proper "tool for examining an intrinsic influence like juror bias . . . is . . . voir dire."
*McClinton*, 135 F.3d at 1186 (citations omitted).

### B. No Evidence of External Influences Exists

In support of his claim that Bruce Treakle was actually biased, Porter directs the Court to
evidence of publicity and public outrage regarding Porter's crimes in the Tidewater area. (*See*
Porter Br. 2 (citation omitted).) However, Porter fails to submit any plausible allegations that
Bruce Treakle heard or saw anything about Porter's crimes prior to the trial. Indeed, the record
affirmatively shows that Bruce Treakle and the other persons on his venire had not heard
anything about Porter's case. (SH 1202.) Accordingly, the record conclusively demonstrates
that Bruce Treakle was not actually biased because of some external contact.

---

[9] Examples of extrinsic influences include, "an attempt to bribe a juror, a juror's
application for a job in the district attorney's office, and newspaper articles and media attention."
*Williams v. Bagley*, 380 F.3d 932, 945 (6th Cir. 2004) (citation omitted).

[10] Porter repeatedly insists the controlling jurisprudence mandates a hearing when a
petitioner raises a claim concerning juror partiality. (*See, e.g.*, Porter's Br. 7 (citing *Barnes*, 751
F.3d at 243–44). Porter, however, consistently fails to distinguish between a claim of juror
partiality based on external contacts and a claim of juror partiality based on intrinsic bias. *See,
e.g.*, *Barnes*, 751 F.3d at 249–53 (remanding habeas matter to conduct an evidentiary hearing
with respect to claim that juror called her pastor following closing argument to discuss attorney's
arguments that quoted the Bible regarding the propriety of the death penalty); *Billings v. Polk*,
441 F.3d 238, 245–46 (4th Cir. 2006) (dismissing claim pertaining to an intrinsic influence
without conducting a hearing).

### C. Porter's Claim Involves Potential Intrinsic Bias

Porter contends that Bruce Treakle's affinity for his brother "impacted Treakle's perception of the evidence and his ultimate decisions to convict and sentence Porter to death." (Porter Reply 2, ECF No. 96.)  As the evidentiary cornerstone of this claim, Porter relies upon Bruce Treakle's post-verdict comments that, *inter alia*, "he found the officer's wife (Treva Reaves) to be a very powerful witness," (SH 6215), and Treakle's explanation that he found Treva Reaves's "testimony moving and very emotional for him because his brother is a sheriff's officer in Norfolk." (SH 6215.)  However, as explained more fully below, none of the above statements may be used to establish Juror Treakle's purported bias. *See* Fed. R. Evid. 606(b). "[T]he 'firmly established' *general* rule is that juror testimony *may not* be used to impeach a jury verdict. . . . The only exception to this rule is for external influence . . . ." *Robinson*, 438 F.3d at 365 (citations omitted).  Indeed, as explained below, Porter's pursuit of this evidence from Bruce Treakle frustrates the very purpose of Federal Rule of Evidence 606(b).

Rule 606(b)(1) provides, in pertinent part: "During an inquiry into the validity of a verdict . . . a juror may not testify about . . . the effect of anything on that juror's or another juror's vote; or *any juror's mental processes concerning the verdict or indictment.*  The court may not receive a juror's affidavit or evidence of a juror's statement on these matters." Fed. R. Evid. 606(b)(1) (emphasis added).[11]  This rule embodies the recognition that "the proper functioning of the jury system requires that the courts protect jurors from being 'harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to aside a verdict.'" *United States v. Moten*, 582 F.2d 654, 664

---

[11] That rule provides the following exceptions: "[a] juror may testify about whether:  **(A)** extraneous prejudicial information was improperly brought to the jury's attention; **(B)** an outside influence was improperly brought to bear on any juror; or **(C)** a mistake was made in entering the verdict on the verdict form." Fed. R. Evid. 606(b)(2).

16

(2d Cir. 1978) (quoting *McDonald v. Pless*, 238 U.S. 264, 267 (1915)); *see Fullwood v. Lee*, 290 F.3d 663, 679–80 (4th Cir. 2002) (citations omitted) (observing that Rule 606(b) is designed "to protect the finality and integrity of verdicts and to guard against the harassment of jurors").

### D. Establishing Intrinsic Bias after the Verdict

"To establish actual bias after a trial, a party must prove that a juror was not 'capable and willing to decide the case solely on the evidence before [him].'" *United States v. Sampson*, 820 F. Supp. 2d 151, 163 (D. Mass. 2011) (alteration in original) (quoting *McDonough Power Equip., Inc v. Greenwood*, 464 U.S. 548, 554 (1984)). "Determining whether a juror is biased or has prejudged a case is difficult, partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it." *Smith v. Phillips*, 455 U.S. 209, 221–22 (1982) (O'Connor, J., concurring). One may demonstrate that a juror was intrinsically biased by a combination of, *inter alia*: (1) the juror's admissions of bias on voir dire; (2) a juror's inaccurate or incomplete answers on voir dire; (3) non-juror evidence of bias; and, (4) an examination of the juror's actions during the trial. *See, e.g., United States v. Lawhorne*, 29 F. Supp. 2d 292, 312 (E.D. Va. 1998). A court is not "obliged to hold an evidentiary hearing any time that a defendant alleges juror bias, regardless of whether he utilized the pre-trial procedures available for ensuring the jury's impartiality." *Billings*, 441 F.3d at 245–46 (footnote omitted). "To justify a post-trial hearing involving the trial's jurors, the defendant must do more than speculate; he must show clear, strong, substantial and incontrovertible evidence . . . that a specific, non-speculative impropriety occurred." *United States v. Wright*, No. 96–4451, 1997 WL 693584, at *2 (4th Cir. Oct. 28, 1997) (omission in original) (quoting *Tejada v. Dugger*, 941 F.2d 1551, 1561 (11th Cir. 1991)). "[T]he Supreme Court has required a hearing [when] the source of potential bias was not discoverable on *voir dire*, either because a juror *deliberately*

17

*omitted material information* in response to questions asked on *voir dire* or because the
circumstances that potentially compromised the juror's impartiality did not arise until after the
trial had begun." *Billings*, 441 F.3d at 246 n.4 (emphasis added) (citations omitted).

### E. Analysis of Actual Bias Claim

The record fails to plausibly suggest that Bruce Treakle "deliberately omitted material
information in response to questions asked on *voir dire*." *Id.* (citations omitted). Defense
counsel asked whether, "anyone here, or a member of your close personal family, worked in law
enforcement in any capacity as a volunteer or an employee?" (SH 1225.) Bruce Treakle readily
volunteered that he had a nephew who was a police officer in Arlington County, where the trial
was being conducted. (SH 1225.) Bruce Treakle further assured defense counsel such a
circumstance would not impair his ability to sit and render a fair and impartial verdict.
(SH 1225–26.)

Porter faults Bruce Treakle for failing to also volunteer that he had another relative, a
brother who worked in law enforcement for the Chesapeake Sheriff's Department. Trial counsel,
however, did not ask Treakle, who was the first member of the venire to respond to the question,
to identify every member of his family who had a connection to law enforcement. "[A] juror's
failure to elaborate on a response that is factually correct but less than comprehensive" is not
necessarily indicative of deceit where no follow-up question is asked. *Porter v. Zook*, 803 F.3d
694, 697 (4th Cir. 2015) (citing *Billings*, 441 F.3d at 245; *Fitzgerald v. Greene*, 150 F.3d 357,
363–64 (4th Cir. 1998)). Moreover, the voir dire regarding the connection of venire members to
law enforcement did not engage in any searching scrutiny of how each individual law
enforcement relationship may play out with respect to the particular evidence to be introduced in

18

Porter's case. *Benabe*, 654 F.3d at 781;[12] (*see* Porter Reply Br. 3. n.3.) Rather, as reflected above, counsel just sought a general assurance from each member of the venire that his connection to law enforcement personnel would not impair his or her ability to remain impartial. Bruce Treakle already had provided that assurance.

On the current record, it would be counterfactual to suggest that Bruce Treakle intentionally concealed his relationship with his brother Pernell to secure a place on Porter's jury. First, Bruce Treakle readily admitted that he had a close family relative in law enforcement. Second, Bruce Treakle freely admitted to Porter's habeas counsel that his brother Pernell worked in law enforcement.[13] Porter's suggestion that Mr. Treakle volunteered information about his nephew, who was a police officer, but not about his brother, who was a deputy sheriff, for fear of losing his place on the jury suggests a cageyness that is refuted by the record. Bruce Treakle's circumstances are thus distinguishable from those instances where the record indicated that a juror purposely concealed information about his or her relationship to law enforcement officials, the prosecutor, or prosecution witnesses, in order to secure a place on the jury. *See Conaway v. Polk*, 453 F.3d 567, 588 (4th Cir. 2006); *United States v. Scott*, 854 F.2d

---

[12] In *Benabe*, the defendants were members of the Insane Deuces street gang indicted on racketeering and related murder and drug charges. 654 F.3d at 756. On voir dire, Juror 79 admitted that her child had been involved in a street gang when he was nine to eleven years old. *Id.* at 779. Juror 79 later revealed to the foreperson that the gang her son had been involved with was the Insane Deuces. *Id.* at 780. The Seventh Circuit upheld the district court's decision to reject the motion for new trial on juror bias without conducting an evidentiary hearing. *See id.* at 781. ("[T]he record shows that Juror 79 answered correctly during voir dire that her son had been involved in a gang. She did not say that it was the Insane Deuces, but nobody asked her.").

[13] Porter appears to suggest that Bruce Treakle also admitted to other members of the jury that he had a brother in law enforcement. (Porter Br. 6 (citing SH 5231).) This reinforces the notion that Bruce Treakle was not attempting to conceal his relationship to a brother in law enforcement.

697, 699–700 (5th Cir. 1988); *Williams v. Netherland*, 181 F. Supp. 2d 604, 608–10 (E.D. Va. 2002). Thus, Porter fails to demonstrate that Treakle deliberately omitted material information.

In remanding this case, the Fourth Circuit observed that, regardless of whether Treakle acted honestly on voir dire, another "factor that may give rise to distinct concerns about actual bias is a personal relationship that colors a juror's perspective on a case." *Porter*, 803 F.3d at 698 (citing *Fields v. Woodford*, 309 F.3d 1095, 1103–06 (9th Cir. 2002); *Scott*, 854 F.2d at 698–700)). As Bruce Treakle did not intentionally conceal the fact that he had a brother who was a deputy sheriff, the mere fact of that relationship is not sufficient to warrant a further inquiry at this stage. *Compare Scott*, 854 F.2d at 698 (granting new trial where juror intentionally concealed that he had a brother in law enforcement in the jurisdiction that had investigated the crimes against the defendant) *with Billings*, 441 F.3d at 245 (concluding no need to conduct an evidentiary hearing with respect to juror bias based on preexisting contacts with prosecutor and defense counsel when the issue could have been explored on voir dire); *see Fields v. Brown*, 503 F.3d 755, 773 (9th Cir. 2007) (en banc) (internal quotation marks omitted) (citations omitted) ("Although we have recognized that bias may be implied where close relatives of a juror have been personally involved in a situation involving a similar fact pattern, we have never done so when the juror was honest on voir dire."). Perhaps if Pernell Treakle had been murdered or shot in the line of duty one could doubt Bruce Treakle's assurances that he could remain impartial in the trial of Porter for the capital murder of a police officer. *See Fields*, 309 F.3d at 1103–06 (remanding for evidentiary hearing where defendant was on trial for, *inter alia*, rape and abduction, and a juror's wife had been raped and abducted two years prior to trial). That, however, is not the case.

What is before the Court is Bruce Treakle's honest, sworn assurance that he could remain impartial despite the fact that the case involved the murder of a police officer and he had a close relative who was a police officer. *Porter v. Warden of Sussex I State Prison*, 722 S.E.2d 534, 539 (Va. 2012) (observing "petitioner has failed to demonstrate that Juror T failed to answer honestly a material question during voir dire"). Porter insists that Bruce Treakle's assurance of impartiality has been called into question by his post-trial comments indicating that he was particularly moved by the testimony of Officer's Reaves widow. However, "[a]s is reflected in Federal Rule of Evidence 606(b), requests to impeach jury verdicts pursuant to post-trial contact with jurors generally are disfavored." *United States v. Sandalis*, 14 F. App'x 287, 289 (4th Cir. 2001) (footnote omitted) (citing *United States v. Gravely*, 840 F.2d 1156, 1159 (4th Cir. 1998)). Thus, "when a party seeks to attack or support a verdict, Rule 606(b) prohibits all inquiry into a juror's mental process in connection with the verdict." *United States v. Cheek*, 94 F.3d 136, 143 (4th Cir. 1996) (citing *Tanner v. United States*, 483 U.S. 107, 117–22 (1987); *Stockton v. Commonwealth*, 852 F.2d 740, 743–44 (4th Cir. 1988)).[14]

Porter insists that it is premature to require him to substantiate his actual bias claim with any admissible evidence. (Porter Reply 1(citation omitted).) Rather, he contends that, at this stage, the disposition of his claim is governed by the standards applicable for a motion to dismiss and the Court must accept his "well-pleaded allegations as true, and . . . to draw all reasonable inferences in his favor." (*Id.* (quoting *Conaway*, 453 F.3d at 582). Porter's contention, while accurate, is woefully incomplete. Because Virginia adjudicated the merits of his actual bias claim, Porter was required to "allege facts sufficient to meet the exacting standard set forth in 28 U.S.C. § 2254(d) . . . ." *Townes v. Jarvis*, 577 F.3d 543, 551 (4th Cir. 2009) (citing *Bell v.*

---

[14] In both *Conaway v. Polk* and *Williams v. Netherland*, the petitioner was able to substantiate his allegations of juror bias with evidence or allegations of discoverable evidence that did not run afoul of the prohibitions of Rule 606(b).

*Jarvis*, 236 F.3d 149, 158 (4th Cir. 2000)). In assessing under 28 U.S.C. § 2254(d) whether a federal habeas petitioner's claim is subject to dismissal without an evidentiary hearing, this Court looks to the character of the evidence before the Supreme Court of Virginia. *See Strong v. Johnson*, 495 F.3d 134, 140 (4th Cir. 2007). For example, in *Strong*, the Fourth Circuit examined the Supreme Court of Virginia's rejection of a habeas petitioner's claim that "his lawyer ignored his instruction to appeal his state convictions." *Id.* at 136. The Fourth Circuit emphasized that the first step of the analysis was "to clarify what evidence was properly before the Supreme Court of Virginia." *Id.* at 139. The Fourth Circuit concluded the Supreme Court of Virginia was not required to consider unsworn allegations or submissions not authorized by its rules. *Id.* at 139–41. Ultimately, the Fourth Circuit concluded that the Supreme Court of Virginia acted reasonably in rejecting the petitioner's claim "after considering Strong's conclusory (sworn) statement" and "his lawyers more detailed affidavit," which explained that after initially expressing a desire to appeal, after further discussion with counsel, Strong agreed not to appeal. *Id.* at 136.

Porter has failed to substantiate his claim with competent evidence that tends to show Bruce Treakle was biased. The prohibition of Rule 606(b) extends to the forecast of evidence in affidavits when assessing the necessity of an evidentiary hearing. *See Bacon v. Lee*, 225 F.3d 470, 485 (4th Cir. 2000) (concluding no evidentiary hearing was warranted regarding juror bias claim where the forecasted evidence of juror bias pertained to racial jokes allegedly made during deliberations (citing Fed. R. Evid. 606(b); *Tanner*, 483 U.S. at 121; *Gosier v. Welborn*, 175 F.3d 504, 510–11 (7th Cir. 1999))). In *Gosier*, the federal habeas petitioner sought to impugn his state death sentence with an affidavit from a juror regarding the juror's failure to follow the trial court's instructions. 175 F.3d at 510. As the Seventh Circuit observed in rejecting a similar

22

claim: "It would be altogether inappropriate for a federal court to entertain the kind of evidence [the petitioner] proffers just because this is a collateral attack, when neither a federal nor a state court allows a verdict to be challenged directly using evidence of this kind. His current effort to reconstruct the jury's deliberations is simply forbidden." *Id.* at 511.

Here, the Supreme Court of Virginia rejected Porter's actual bias claim because Porter "provided no admissible evidence that Juror T was biased against petitioner as a result of his brother's employment." *Porter*, 722 S.E.2d at 549. Because Porter has failed to support his claim that Juror Treakle was actually biased with any significant admissible evidence, the Supreme Court of Virginia did not act unreasonably in rejecting this claim. *See Fullwood*, 290 F.3d at 682 (citation omitted) (observing that "a petitioner who seeks to invalidate a verdict that has already withstood challenges on direct review and state collateral review must introduce competent evidence that there was juror misconduct in the first place").

Moreover, even if the Court could consider Bruce Treakle's post-verdict mental impression of the trial evidence and decide the matter under a *de novo* standard of review, no relief is warranted because Treakle's innocuous statements do not indicate that he was biased. *See Bacon*, 225 F.3d at 485. Treakle merely admitted that he "found the officer's wife (Treva Reaves) to be a very powerful witness" and that "he found her testimony moving and very emotional for him because [of] his brother['s]" employment. (SH 6215.) Treakle also "expressed sympathy for law enforcement officers, and emphasized that they put their lives on the line every day for the community." (SH 6215.)

"A juror's generally favorable impression of law enforcement does not necessarily amount to bias any more than does a juror's personal association with law enforcement." *United States v. Umana*, 750 F.3d 320, 342 (4th Cir. 2014) (citing *United States v. LaRouche*, 896 F.2d

23

815, 830 (4th Cir. 1990)), *cert. denied*, 135 S. Ct. 2856 (2015). Furthermore, the fact that Juror

Treakle was moved by Mrs. Reaves's testimony because he had a sibling in law enforcement

does not suggest that Juror Treakle disregarded his oath to ultimately decide the case on the law

and the evidence. *See United States v. Gumbs*, 562 F. App'x 110, 115–16 (3d Cir. 2014)

(concluding that district court did not err in failing to remove a juror who had cried when

watching video of defendant sexually abusing an eight-year old victim); *Miller v. Webb*, 385

F.3d 666, 680 (6th Cir. 2004) (Gibbons, J., dissenting) ("Expressions of sympathy for a victim,

without more, do not demonstrate actual bias where the juror has assured the court that she may

decide the case fairly."); *United States v. Jones*, 716 F.3d 851, 857 (4th Cir. 2013) ("Because

jurors will have opinions from their life experiences, it would be impractical for the Sixth

Amendment to require that each juror's mind be a tabula rasa."). Moreover, the voir dire here

thoroughly explored whether the jurors, including Treakle, could follow the Circuit Court's

instructions and remain impartial in imposing a verdict, despite the fact that the case involved the

capital murder of a police officer. *Scott v. Mitchell*, 209 F.3d 854, 879 (6th Cir. 2000)

("Allegations of jury bias must be viewed with skepticism when the challenged influence

occurred before the jurors took their oath to be impartial."). Given Treakle's honest and

forthright behavior, Porter has yet to forecast to the Court any evidence that plausibly suggests

that Treakle did not remain impartial or follow the Circuit Court's instructions to decide the case

on the law and evidence. *See Williams*, 529 U.S. at 440–41 (juror concealed prior legal

relationship with the prosecutor and marriage to a prosecution witness); *Conaway*, 453 F.3d at

578 (juror concealed relationship to key prosecution witness and, prior to voir dire, expressed

opinion that the defendant should die if he committed the crime).  Accordingly, Porter's actual bias claim lacks merit and will be dismissed.  The Court will deny a certificate of appealability.

An appropriate Final Order will accompany this Memorandum Opinion.


Date: 4-25-16
Richmond, Virginia

/s/
James R. Spencer
Senior U. S. District Judge